IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC X. RAMBERT, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-5249 |
| | : | |
| LAWRENCE KRASNER, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                                          **FEBRUARY 20, 2020**

      Currently before the Court are Plaintiff Eric X. Rambert's Amended Complaint (ECF No. 12), "Amended Memorandum of Law in Support of Order to Show Cause for an [sic] Preliminary Injunction and a Temporary Restraining Order," (ECF No. 11), and his paperwork in support of his request to proceed *in forma pauperis*.[1] (ECF Nos. 10, 13, 14 & 15). For the following reasons, the Court will grant Rambert leave to proceed *in forma pauperis* and dismiss his Amended Complaint.[2]

---

[1] The Court initially denied Rambert's Motion to Proceed *In Forma Pauperis* on the basis that he was a "three-striker" under 28 U.S.C. § 1915(g). (ECF No. 6.) However, after Rambert moved for reconsideration, the Court concluded that Rambert only has two strikes for purposes of § 1915(g). (*See* ECF Nos. 8 & 9.) Accordingly, the Court gave Rambert time to provide a certified copy of his prisoner account statement in accordance with 28 U.S.C. § 1915(a)(2) if he still sought to proceed *in forma pauperis*. Rambert returned with the above group of filings.

[2] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted).

## I. FACTUAL ALLEGATIONS[3]

In 1983, Rambert pled guilty in the Philadelphia Court of Common Pleas to criminal conspiracy, burglary, robbery, rape, and involuntary deviate sexual intercourse. *Commonwealth v. Rambert*, CP-51-CR-0625331-1983 (Phila. C.C.P.). He has repeatedly challenged his convictions in state and federal court, without success. *See, e.g.*, *id.*; *Rambert v. Varner*, Civ. A. No. 01-2178, 2002 WL 1608225, at *3 (E.D. Pa. July 17, 2002) ("Rambert's habeas petition must be denied because it is untimely and fails to meet any exception to the statute of limitations under the AEDPA."); *Commonwealth v. Rambert*, No. 3634 EDA 2017, 2018 WL 4402132, at *1 (Pa. Super. Ct. Sept. 17, 2018) (affirming the denial of Rambert's "tenth petition filed pursuant to the Post Conviction Relief Act"). One of the bases upon which Rambert unsuccessfully challenged his conviction in his tenth post-conviction petition was that he should be entitled to withdraw his guilty plea "because he was unlawfully graded a career criminal and placed in the career criminal program in violation of 42 Pa.C.S. § 6302 Juvenile Act where the career criminal program lacked tribunal jurisdiction because [Rambert] was seventeen (17) years old." *Commonwealth v. Rambert*, 2018 WL 4402132, at *2.

Rambert's apparent belief that his guilty plea should be vacated and/or that his sentence was improper because he was treated as a career offender motivates his claims in the instant civil action. In his Amended Complaint, Rambert brings civil rights claims, pursuant to 42 U.S.C. § 1983, alleging that the underlying convictions supporting his career criminal treatment in his 1983 case were false, that the prosecutor and public defender were aware of this, and that the

---

[3] The following facts are taken from the Complaint, the publicly available docket for Rambert's underlying criminal proceeding and judicial opinions issued in connection with Rambert's post-conviction filings, of which the Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

remaining Defendants failed to correct the allegedly improper records of the underlying convictions pursuant to Pennsylvania law. Rambert names the following Defendants in their individual and official capacities: (1) Lawrence Krasner, the District Attorney for Philadelphia; (2) Douglas Weck, identified as an Assistant District Attorney; (3) Simran Dhillon, identified as an Assistant District Attorney; (4) Benjamin T. Jackal, identified as an "Appeals Officer for the D.A.'s Office"; (5) Josh Shapiro, the Attorney General for Pennsylvania; (6) Robert Reid, identified as Executive Deputy Attorney General; (7) Stephen St. Vincent, identified as the Director of Policy and Planning who works for the Attorney General; (8) George Murphy, identified as an Assistant District Attorney; and (9) Jules Epstein, identified as the public defender who represented Rambert in his criminal case.

Rambert alleges that Defendant George Murphy, identified as the "prosecuting officer" in Rambert's 1983 criminal case "placed false prior convictions in [Rambert's] criminal record [that] classified [him] [as] a career criminal and tried [him] in the Career Criminal Program." (Am. Compl. ECF No. 12 at 5.) Rambert avers that the alleged placement of false prior convictions in his record constituted a violation of Pennsylvania's Criminal History Record Information Act ("CHRIA"), *see* 18 Pa. Cons. Stat. §§ 9101-83, induced him to plead guilty, and caused him to be subjected to an unconstitutional sentence. (*Id.*) Rambert characterizes these underlying convictions as false, but does not provide any information about them other than to describe them as false in a conclusory fashion.

Rambert adds that Defendant Jules Epstein, identified as the public defender who represented Rambert, failed to investigate this matter and failed to inform Rambert that he was being classified as a career criminal. (*Id.*) He contends that Epstein conspired with the

prosecutor to conceal this information and induce an invalid sentence in violation of Rambert's constitutional rights. (*Id.* at 6.)

Rambert alleges that he did not learn of the existence of the allegedly false convictions in his record until twenty-two years after his 1983 conviction.[4] (*Id.* at 5.) He also claims to have first learned of the existence of CHRIA in May of 2019, upon reviewing an opinion issued in the case of *Taha v. Bucks County*, even though the CHRIA was adopted "in 1980 in order to 'provide for an orderly collection and dissemination of criminal history information in the Commonwealth.'"[5] *Taha v. Bucks Cty.*, Civ. A. No. 12-6867, 2014 WL 695205, at *2 (E.D. Pa. Feb. 21, 2014). Rambert's claims against all of the Defendants other than Murphy and Epstein all appear to concern their alleged involvement in failing to keep proper records, maintaining improper records, or failing to correct Rambert's records in recent years, long after Rambert's conviction was secured, all in violation of the CHRIA. (Am. Compl. ECF No. 12 at 2-5.)

Rambert wrote various letters to the Attorney General's office. (*Id.* at 6.) He does not clearly describe the content of those letters, but the Amended Complaint suggests Rambert wanted the Attorney General to institute an action to correct Rambert's allegedly false criminal records by filing an action under § 9183 of the CHRIA. (*Id.*) Pursuant to that provision, the Attorney General "may institute an action in a court of proper jurisdiction against any person,

---

[4] Rambert appears to both allege that he did not know of the existence of the allegedly false convictions at the time of his conviction and that the existence of those allegedly false convictions induced him to plead guilty.

[5] *Taha* was a class action in which the plaintiffs alleged that officials in Bucks County published their expunged arrest records on a publicly available electronic search tool, in violation of CHRIA. *See Taha v. Bucks Cty. Pennsylvania*, 172 F. Supp. 3d 867 (E.D. Pa. 2016). Despite Rambert's allegation that he only learned of CHRIA in May 2019, additional allegations suggest he contacted the Attorney General's office about CHRIA matters as far back as 2015. (Am. Compl. ECF No. 12 at 6 (indicating that Rambert received responses to his letters to the Attorney General's office on several dates including August 29, 2015 and January 3, 2018).)

agency or organization to enjoin any criminal justice agency, noncriminal justice agency, organization or individual violating the provisions of [the CHRIA] or to compel such agency, organization or person to comply with the provisions of [the CHRIA]." 18 Pa. Cons. Stat. § 9183. Rambert received various responses to his letters, including responses from Defendants Reid and St. Vincent, but no action was instituted on his behalf. (Am. Compl. ECF No. 12 at 6.) The Attorney General's Office's inaction is the basis for Rambert's claims against Defendants Shapiro, Reid, and St. Vincent.[6] (*Id.* at 4.)

Rambert also sought relief through the District Attorney's Office. In that regard, he filed a "right to know law request," *see* 65 Pa. Cons. Stat. §§67.101-67.3104, with the District Attorney's Office and received a reply from Defendant ADA Weck, who apparently directed him to a form he could use to address his situation. (*Id.* at 6-7.) Rambert does not clearly identify the contents of his request, but the Amended Complaint suggests it concerned the underlying "false" convictions. After Rambert apparently submitted a completed form, Weck informed him that his request would require an extension. (*Id.* at 7.) Rambert subsequently received a response from ADA Dhillon "denying the right to know request." (*Id.*) Rambert apparently filed another request with ADA Weck, demanding that the District Attorney's Office correct his criminal history record information. Ultimately, the District Attorney's Office did not provide him the relief sought and ADAs Weck, Dhillon, and Jackal were all involved in handling and/or denying

---

[6] Rambert alleges that Attorney General Shapiro violated his rights "by failing to perform his duties to institute an action against defendants in the violation of [Rambert's] Criminal History Record or compel compliance pursuant to § 9183 subsection (a) . . . ." (ECF No. 12 at 4.) Similarly, he alleges that Deputy Attorney General Reid violated his rights "when he failed in his duties to institute an action or compel compliance where he was notified of the [CHRIA] violation . . . [and] refused to implement § 9183(a)." (*Id.*) Likewise, Defendant St. Vincent is alleged to have violated Rambert's rights "when he failed to notify the Chief of [Rambert's] [CHRIA] violation or institute an action or compel compliance for the violation . . . ." (*Id.*)

5

Rambert's request. The Amended Complaint suggests that Rambert appealed the matter to the Court of Common Pleas in December 2019.[7] Rambert's claims against these ADAs and District Attorney Krasner are based on their alleged failures to correct his records pursuant to the CHRIA upon request.[8]

Rambert claims violations of his Eighth Amendment, due process, and equal protection rights "to a fair and impartial process to correct the criminal history record information of prior convictions that would mandate the Court to review the process that the CHRIA violation caused." (*Id.* at 9.) Rambert primarily seeks a declaration that his rights were violated,[9] an injunction directing the Defendants to "expung[e] all false, inaccurate, materially misleading prior convictions and immediately notify all Criminal Justice Agencies of the expungement," and $10,000, "the maximum amount of compensatory damages for the CHRIA violation against all defendants." (*Id.*)

In his filing titled "Amended Memorandum of Law in Support of Order to Show Cause for an [sic] Preliminary Injunction and a Temporary Restraining Order," Rambert seeks preliminary injunctive relief that essentially requires the District Attorney's Office to "remove [his] prior convictions that are materially misleading, false and inaccurate that violate[] the

---

[7] It is not clear whether Rambert was seeking review of a CHRIA request or the denial of a request submitted pursuant to Pennsylvania's right to know law.

[8] Rambert alleges that Krasner violated his rights by failing to "have false prior convictions removed from [Rambert's] criminal history record that are unconstitutional and invalid[ly] depriving [Rambert] of his rights . . . ." (*Id.* at 2.) He similarly alleges that Weck "failed in his duties to correct [Rambert's] criminal history record that [Rambert] had notified was inaccurate." (*Id.*) He raises similar allegations against Dhillon and Jackal. (*Id.* at 3.)

[9] Rambert's request for declaratory relief is inappropriate because declaratory judgment is unavailable "solely to adjudicate past conduct" or "to proclaim that one party is liable to another." *Corliss v O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam); *see also Andela v. Administrative Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (per curiam).

6

Criminal History Record Information Act . . . ." (ECF No. 11 at 1.) Rambert asserts he is entitled to this relief because the Defendants' failure to correct these records and "restore [him] back before a sentencing court for resentenc[ing]" violates his rights. (*Id.* at 3.)

## II. STANDARD OF REVIEW

Rambert is granted leave to proceed *in forma pauperis* because it appears that he is unable to pay the costs of filing suit.[10] As Rambert is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) apply, which require the Court to dismiss the Complaint if it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* The Court may also consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As Rambert is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims Against Murphy and Epstein

Rambert alleges that Murphy, the prosecutor in his criminal case, and Epstein, his public defender, violated his constitutional rights by causing "false" prior convictions to be used in a manner that induced him to plead guilty and enhanced his sentence. "[T]o recover damages [or

---

[10] However, as Rambert is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). As Rambert's convictions and sentence have not been reversed or otherwise invalidated, these claims are not currently cognizable in a civil rights action.[11]

### B. Claims Against Shapiro, Reid, and St. Vincent

Rambert's claims against Defendants Attorney General Shapiro, Deputy Attorney General Reid, and Director St. Vincent, are based on their alleged failure to institute an action pursuant to § 9183 of the CHRIA, apparently against the District Attorney and other ADA Defendants, after receiving Rambert's letters notifying them about the allegedly false convictions in his record. However, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Furthermore, "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler*

---

[11] The same is true for any claims that the other Defendants prevented him from being resentenced because the sentence he received was unconstitutional.

*v. Chaney*, 470 U.S. 821, 831 (1985). There is simply no legal basis for any constitutional violation predicated on Shapiro, Reid, and St. Vincent's failure to initiate an action under the CHRIA based upon Rambert's request. It is also noteworthy that the CHRIA permits an individual to bring a cause of action, so Rambert could have filed a complaint on his own without participation from the Attorney General's office. Indeed, the Amended Complaint suggests that he has already done so. In sum, Rambert has not alleged a basis for a plausible constitutional claim against these Defendants.

### C. Claims Against Krasner, Weck, Dhillon, and Jackal

Rambert's claims against the remaining Defendants — the Philadelphia District Attorney and several ADAs — are all based on their alleged failures to correct the false convictions in Rambert's record in accordance with Pennsylvania law and/or their handling of Rambert's requests under Pennsylvania law. Leaving aside whatever claims Rambert may have under state law, he has not stated a federal constitutional claim.

Rambert cites the Eighth Amendment as a basis for his claims. (Am. Compl. ECF No. 12 at 9.) The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. To the extent Rambert alleges that the failure to correct false convictions in his criminal record is responsible for unlawful conviction or imprisonment, his claims are barred by *Heck* for the reasons discussed above. *See supra* § III.A. To the extent he is predicating an Eighth Amendment claim on the failure to correct a government record, there is no legal basis for his claim.

Rambert also claims a violation of his equal protection rights. To set forth an Equal Protection claim, a plaintiff must demonstrate that he is a member of a protected class and that he

9

received different treatment than that received by other similarly-situated individuals. *See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002). Claims for equal protection violations are subject to different levels of scrutiny depending on the status of the claimant, and prisoners do not constitute a protected class for Fourteenth Amendment purposes. *See Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001). Here, Rambert's allegations do not support a plausible equal protection claim, because he has not alleged that he was treated differently from others who were similarly situated. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment").

Finally, Rambert alleges a due process violation predicated entirely on alleged violations of state law. However, "[a] violation of state law is not a denial of due process of law." *Maple Properties, Inc. v. Twp. of Upper Providence*, 151 F. App'x 174, 179 (3d Cir. 2005) (quoting *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 468-69 (7th Cir. 1988)). Furthermore, the Third Circuit has rejected federal due process challenges to publication of arrest or criminal records, even where those records have been expunged in accordance with state law. *See Nunez v. Pachman*, 578 F.3d 228, 233 (3d Cir. 2009) ("In short, no attributes inhere in an expunged record entitling it to special constitutional protection."); *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 117 & n.8 (3d Cir. 1987) (rejecting due process challenge to questionnaire that required disclosure of familial arrests because "[a]rrests are public by their very nature" and the CHRIA "cannot be viewed as removing arrest information from the public record"). In any event, even assuming the existence of a cognizable

interest for purposes of a due process claim, Rambert has failed to state why the procedures set forth in the CHRIA or other state laws are inadequate from a due process perspective.[12] *See Miller v. City of Phila.*, 174 F.3d 368, 373-75 (3d Cir. 1999) (explaining that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'" (citations omitted)).

In sum, Rambert has not alleged a legal basis for a constitutional claim. If anything, his claims are best construed as claims under state law, specifically, the CHRIA. *See* 18 Pa. Cons. Stat. § 9183 (providing for individual action for injunctive relief and not more than $10,000 in damages). However, there is no basis for the Court's jurisdiction over any state law claims.[13] Accordingly, the Court will dismiss Rambert's state law claims for lack of subject matter jurisdiction without prejudice to Rambert pursuing those claims in state court.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Rambert leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). Rambert's claims will be dismissed with prejudice, with the exception of: (1) any claims barred by *Heck v. Humphrey*, which will be dismissed without prejudice to Rambert filing a new civil action only in the event his underlying convictions and/or sentence are vacated or otherwise invalidated; and

---

[12] It is also not clear that Rambert has fully availed himself of those procedures, and "[i]t is difficult to criticize the State's procedures when [one] has not invoked them." *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009).

[13] Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Neither the amount in controversy requirement nor the diversity of citizenship requirement is met here.

11

(2) Rambert's claims under state law, which are dismissed for lack of subject matter jurisdiction without prejudice to Rambert's reassertion of those claims in state court if he chooses to do so. Rambert is not given leave to file a second amended complaint because, having reviewed all of Rambert's filings in this case and for the reasons above, the Court concludes amendment would be futile. Rambert's requests for preliminary injunctive relief are denied. An appropriate Order follows.

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**